IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS – PEORIA DIVISION

| | |
|---|---|
| DEMETRIUS GOLDEN,<br><br>Plaintiff,<br><br>v.<br><br>RANDALL MEISTER, NICHOLAS ROSSI, SUSAN PRENTICE, and other as-yet-unidentified employees of the Illinois Department of Corrections,<br><br>Defendants. | No.<br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Demetrius Golden, through his counsel, Uptown People's Law Center, complains against defendants Randall Meister, Nicholas Rossi, Susan Prentice, and other as-yet-unidentified employees of the Illinois Department of Corrections (IDOC) as follows:

### JURISDICTION AND VENUE

1. This is an action brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of plaintiff's rights as secured by the United States Constitution.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## PARTIES

4. Plaintiff Demetrius Golden is a 29-year-old man who is currently in the custody of the Illinois Department of Corrections (IDOC) Joliet Treatment Center.

5. At all times relevant to this complaint, defendant Randall Meister was a correctional sergeant at Pontiac Correctional Center's North Cell House.

6. At all times relevant to this complaint, defendant Nicholas Rossi was a correctional officer at Pontiac Correctional Center's North Cell House.

7. At all times relevant to this complaint, defendant Susan Prentice was a major and the shift supervisor assigned to Pontiac Correctional Center's North Cell House.

8. At all times relevant to this complaint, defendants Meister, Rossi, and Prentice were acting under color of law and within the scope of their employment for the Illinois Department of Corrections (IDOC).

### Pontiac's North Cell House Segregation Unit

9. In May 2017, plaintiff Demetrius Golden was assigned to the North Cell House (NCH) segregation unit at Pontiac, where he was confined to a one-man cell on 3 Gallery.

10. At the time, Pontiac's North Cell house segregation unit was the highest security housing unit in all of IDOC.

11. Many of the prisoners in the NCH segregation unit had a mental illness which was not being adequately treated, and thus affected their behavior and caused problems for security staff.

12. Prisoners in the NCH segregation unit were housed alone in one-person cells.

13. Prisoners in the NCH segregation unit were allowed out of their cells in only very limited circumstances.

14. Anytime a prisoner left his cell, NCH staff was required to put him shackles.

15. The only time that prisoners were allowed out of shackles is when they were locked alone in a secure environment such as their cells.

16. Although prisoners were at times allowed to go outside for "yard" they were confined to small one-man yard cages while outdoors. Similarly, showers were provided in a locked cell like enclosure which was only occupied by one person at a time.

### Corrections Officers Arrange for Mr. Golden To be Attacked

17. On May 2, 2017, Mr. Golden was housed in Cell 320 on 3 Gallery. A prisoner named Pharoah Morris was housed down the same gallery, in Cell 331.

18. At the time, Mr. Morris suffered from serious mental illness that affected their behavior, and correctional staff, including defendants, recognized that he exhibited problematic behavior.

19. Mr. Morris was classified by IDOC as "high aggression level" and "high escape risk," and he was in segregation at the time for having previously assaulted an IDOC staff member.

20. On the morning of May 2, 2017, Mr. Morris was supposed to go out to have some time on the yard in a cage.

21. On the way to yard, defendant Nicholas Rossi and other IDOC as-yet-unidentified corrections officers conducted a search of Mr. Morris.

22. During the search, Rossi and the other officers found that Mr. Morris had contraband on him, a pair of medical gloves.

23. Upon discovering the contraband, Rossi told Mr. Morris that Rossi would be bringing another prisoner down the gallery soon and that Mr. Morris needed to come through with a "favor" that Morris owed to corrections officers.

24. Rossi and other as-yet-unidentified corrections officers thereafter returned Mr. Morris to his cell and left the cell door unlocked.

25. A few weeks prior to May 2, 2017, defendant Randall Meister explained to Mr. Morris that Mr. Morris could get a reduction in his segregation time if he did a favor for Meister.

26. A short time later, Rossi returned to the gallery, escorting Mr. Golden.

27. Mr. Morris understood the officers' words and actions to mean that they would help Mr. Morris with his disciplinary issues if he would harm Mr. Golden as Rossi escorted Mr. Golden down the gallery.

28. When Mr. Morris spotted Rossi and Mr. Golden walking down the gallery, he walked out of his cell, unshackled, and proceeded to brutally attack Mr. Golden.

29. At the time of the attack, Mr. Golden was in shackles and was completely unable to defend himself.

30. As Mr. Morris attacked Mr. Golden, Rossi stood by and watched and did not intervene despite having a reasonable opportunity to do so.

31. Mr. Golden was severely injured as a result of the attack. He was airlifted to Peoria for emergency mental treatment for a skull fracture and traumatic brain injury.

32. For a long period of time after the attack, Mr. Golden suffered memory loss and other severe cognitive impairment.

### Defendant Prentice's Practice of Condoning Excessive Force and Violence Against Prisoners

33. In May 2017, Defendant Susan Prentice held the rank of major, making her one of the highest-ranking cell house staff members in NCH.

34. Defendant Prentice was the ranking shift supervisor of all NCH staff at the time Mr. Golden was attacked.

35. In the period leading up to and including May 2017, Defendant Prentice maintained a practice in NCH of allowing and even condoning the use of excessive force against NCH prisoners.

36. Prentice allowed, and at times directed, corrections officers who worked in her chain of command to directly use excessive force against prisoners,

and she also allowed corrections officers to manipulate prisoners to commit acts of violence against other prisoners.

37. When Defendants Meister and Rossi set up Mr. Golden to be attacked by Mr. Morris, they were acting pursuant to the practices established and maintained by Susan Prentice.

38. When Defendants Meister and Rossi set Mr. Golden up to be attacked by Mr. Morris, they knew that their supervisor Defendant Prentice would never meaningfully question their actions or cause them to be held accountable for their misconduct.

39. As a result of Defendant Prentice's misconduct, widespread physical abuse of prisoners existed in NCH during the period of time leading up to and during Mr. Golden's attack.

## Count One
## 42 U.S.C § 1983 – Eighth Amendment

40. Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein.

41. As described in further detail above, defendants violated plaintiff's right to be free from cruel and unusual punishment.

42. As a result of the misconduct described in this count, plaintiff suffered physical, emotional, and psychological harm.

WHEREFORE, plaintiff Demetrius Golden respectfully requests that the Court enter judgment in his favor and against all defendants for compensatory

damages, punitive damages, and attorneys' fees and costs, and for any other relief deemed proper.

## Jury Demand

Pursuant to Federal Rule of Civil Procedure 38, plaintiff demands a jury trial on all issues so triable.

                                                        Respectfully Submitted,

                                                        **DEMETRIUS GOLDEN**

                                                        By: /s/ Alan Mills
                                                        One of plaintiff's attorneys

Alan Mills
Elizabeth Mazur
Nicole Schult
Uptown People's Law Center
4413 N. Sheridan
Chicago, Illinois 60640
(773) 769-1411